NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**WAYNE F. WIGGINS,**
*Petitioner,*

v.

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent.*

---

2011-3114

---

Petition for review of the Merit Systems Protection Board in case no. CH0752100618-I-1.

---

Decided: July 13, 2012

---

R. MARK NASTEFF, JR. Mitchell, Kristl, & Lieber, P.C., of Kansas City, Missouri, for petitioner.

MICHAEL A. CARNEY, Attorney, Office of the General Counsel, Merit Systems Protection Board, of Washington, DC, for respondent. With him on the brief were JAMES M. EISENMANN, General Counsel, and KEISHA DAWN BELL, Deputy General Counsel.

---

Before BRYSON, PROST, and REYNA, *Circuit Judges*.

PER CURIAM.

The Merit Systems Protection Board ("MSPB") dismissed Petitioner Wayne Wiggins' appeal of his constructive removal claim for lack of subject matter jurisdiction. Because Wiggins failed to make non-frivolous allegations in support of his contention that his resignation was not voluntary, we affirm.

I.

From February 24, 1992, until July 18, 2008, Wiggins was an employee of the Internal Revenue Service ("the agency"). Effective April 12, 2004, he was removed for improperly using the agency's Integrated Data Retrieval System. He appealed this termination and eventually settled, agreeing to accept a sixty-day unpaid suspension in lieu of termination.

Pursuant to the settlement agreement, Wiggins was reassigned to, and trained for, a new position. In March 2006, due to what he perceived as retaliation, Wiggins filed an Equal Employment Opportunity ("EEO") complaint. The Equal Employment Opportunity Commission ("EEOC") conducted a hearing at which Wiggins claimed that Carolyn Tanis, his former supervisor, had taken actions against him that he believed to be retaliatory and discriminatory.

Following this hearing, Ms. Tanis contacted the Treasury Inspector General for Tax Administration ("TIGTA") and reported that Wiggins may have made an unauthorized access or disclosure of taxpayer information (a "UNAX" violation) at the EEOC hearing. Five days after the hearing, the EEOC administrative judge informed Wiggins that the TIGTA planned to investigate the possible UNAX violation. Wiggins retired from his position three days later.

About one month after retiring, Wiggins contacted the agency's EEO office, asserting that his retirement was not voluntary but was instead the result of agency discrimination, intolerable working conditions, and coercion. The agency issued a final agency decision finding that Wiggins had not established a claim for constructive removal because he had not been subjected to discrimination or intolerable working conditions.

Wiggins appealed the agency's final decision to the MSPB. He continued to argue that he was constructively removed and that he had retired under threat and duress. An administrative judge ("AJ") issued an Acknowledgement Order requiring Wiggins to "file evidence and argument that this action is within the [MSPB]'s jurisdiction." Resp't App. 9.[1] In response, Wiggins asserted that after his termination in 2004, he had filed two other retaliation actions, at least one of which involved Ms. Tanis. He asserted that there was no evidence that he had committed a UNAX violation and that the TIGTA investigation had been commenced due to an inaccurate report. He then argued that the "commencement of an investigation into a UNAX violation coupled with . . . having an investigator knock on the door of his private residence [caused him to feel] as if he had no other choice but to resign in lieu of what appeared to be his certain termination." Resp't App. 18.

The AJ dismissed Wiggins' appeal for lack of jurisdiction, noting that anticipation of adverse action does not constitute coercion or duress and that the choice between disciplinary action and resignation does not overcome the presumption that resignation is voluntary. A planned

---

[1] Citations to "App. __" herein refer to pages in the Appendix to Petitioner's Brief, and citations to "Resp't App. __" refer to pages in the Appendix to Respondent's Brief.

disciplinary action only renders a resignation involuntary when an employee can show that the agency knew or believed that discipline could not be sustained or that no arguable basis for discipline existed. The AJ concluded that Wiggins made no such showing. Furthermore, although coercion could also be shown by alleging that the agency effectively imposed the terms of his resignation, that there was no realistic alternative to resignation, and that the resignation was the result of improper actions by the agency, Wiggins had alleged none of these factors. The AJ did not grant a hearing because Wiggins had "failed to make a non-frivolous allegation that the Board ha[d] jurisdiction over his appeal." App. 20. Wiggins sought review of the decision by the full MSPB, but the MSPB denied his request, making the initial decision final.

This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## II.

The scope of our review is limited to whether the MSPB's decision was (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c). Whether the MSPB has jurisdiction is a question of law that this court reviews de novo. *Forest v. Merit Sys. Prot. Bd.*, 47 F.3d 409, 410 (Fed. Cir. 1995). "When an individual appeals to the [MSPB], he or she has the burden of proving, by a preponderance of the evidence, that the board has jurisdiction." *Id.* To obtain an evidentiary hearing, Wiggins was required to make non-frivolous allegations that, if proven, would establish that the MSPB had jurisdiction. *See Garcia v. Dep't of Homeland Sec.*, 437 F.3d 1322, 1344 (Fed. Cir. 2006).

The MSPB has jurisdiction over certain agency actions, including termination. *See* 5 U.S.C. §§ 7513(d), 7512. A resignation is presumed voluntary. *Terban v. Dep't of Energy*, 216 F.3d 1021, 1024 (Fed. Cir. 2000). To overcome that presumption, Wiggins was required to show either (1) that the resignation or retirement was the product of misinformation or deception by the agency or (2) that the retirement was coerced. *Id.* To show that his resignation was coerced, Wiggins needed to establish that "(1) the agency effectively imposed the terms of [his] resignation or retirement; (2) [he] had no realistic alternative but to resign or retire, and (3) [his] resignation or retirement was the result of improper acts by the agency." *Garcia*, 437 F.3d at 1329 (quoting *Shoaf v. Dep't of Agric.*, 260 F.3d 1336, 1341 (Fed. Cir. 2001)). The test is objective, and required Wiggins to demonstrate that "a reasonable employee confronted with the same circumstances would feel coerced into resigning." *Id.*

Wiggins recognizes that voluntary resignation is generally not reviewable by the MSPB. *See* 5 U.S.C. § 7512. He recites the three-part test for duress or coercion but does not explain how it is satisfied in this case. Instead, he argues for the first time that "[a]lthough this Court has upheld MSPB decision[s] ruling resignations were voluntary where they were submitted to avoid threatened termination for cause, the threatened termination must be for good cause." Pet'r's Br. at 11. Wiggins suggests that the threatened termination was not for good cause because he did not actually commit a UNAX violation.

These arguments fail. First, Wiggins was not threatened with termination, but rather with an investigation that he claims would have exonerated him. This is not consistent with his claim that his termination was inevitable and that he had no choice but to resign. *See Holman v. Dep't of the Treasury*, 9 M.S.P.R. 218, 220 (1981) (concluding that fear of a possible future adverse

action is not adequate to rebut a presumption of voluntariness). Second, he has at no point in this proceeding even alleged, let alone offered factual support for, the factors necessary to show coercion. Nor has he alleged facts that would support a finding that a reasonable employee in the same circumstances would feel coerced into resigning.

Wiggins alleges only that he chose to retire rather than endure an investigation that he believes would have exonerated him. However, the choice between two unattractive options does not render the decision to retire involuntary. *Staats v. U.S. Postal Serv.*, 99 F.3d 1120, 1124 (Fed. Cir. 1996); *Schultz v. U.S. Navy*, 810 F.2d 1133, 1136 (Fed. Cir. 1987) ("An unpleasant choice between disciplinary action and retirement does not rebut the presumption of voluntariness of [a] choice to retire."); *Christie v. United States*, 518 F.2d 584, 587 (Ct. Cl. 1975) ("Merely because the plaintiff was faced with an inherently unpleasant situation in that [the] choice was arguably limited to two unpleasant alternatives does not obviate the voluntariness of [the] resignation."). Even if true, these allegations are not sufficient to overcome the presumption that Wiggins' retirement was voluntary. Therefore, the judgment of the MSPB is hereby

## AFFIRMED

### COSTS

Each party shall bear its own costs.