NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SIDNEY NELSON, JR.,**
*Petitioner*

**v.**

**OFFICE OF PERSONNEL MANAGEMENT,**
*Respondent*

---

2014-3191

---

Petition for review of the Merit Systems Protection Board in No. SF-0845-13-0347-I-1.

---

Decided: May 14, 2015

---

SIDNEY NELSON, JR., Seattle, WA, pro se.

ALBERT S. IAROSSI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by SHELLEY D. WEGER, BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., REGINALD T. BLADES, JR.

---

Before MOORE, CLEVENGER, and WALLACH, *Circuit Judges.*

PER CURIAM.

Petitioner Sidney Nelson, Jr., appeals the final order of the Merit Systems Protection Board ("Board") affirming the Office of Personnel Management's ("OPM") finding that Mr. Nelson owed $36,505.58 in overpaid annuity payments from the Federal Employees Retirement System ("FERS"). *See Nelson v. Office of Pers. Mgmt.*, No. SF-0845-13-0347-I-1 (Merit Sys. Prot. Bd. Aug. 15, 2014) (Resp't's App. 44–50) ("Final Order"); *Nelson v. Office of Pers. Mgmt.*, No. SF-0845-13-0347-I-1 (Merit Sys. Prot. Bd. Dec. 5, 2013) (Resp't's App. 22–37) ("Initial Decision"). Because the Board's findings were supported by substantial evidence, this court affirms.

## BACKGROUND

Mr. Nelson, a former mail handler with the United States Postal Service, was approved for FERS disability retirement benefits effective July 19, 2000. In order to continue receiving these benefits, he was limited to earning less than $31,937.60, which was 80% of his base pay at retirement of $39,922. In other words, if he were to earn $31,937.60 or more, he would be ineligible for disability retirement benefits. OPM eventually discovered that while Mr. Nelson was receiving disability retirement payments, his earnings exceeded the 80% limitation in calendar years 2001, 2005, 2006, and 2007.

On February 1, 2006, OPM informed Mr. Nelson he had been overpaid $3,225.38 from July 1, 2002, through January 31, 2006. OPM stated the cause of the overpayment was Mr. Nelson's receipt of disability payments despite the fact he was ineligible to receive them. On February 8, 2006, Mr. Nelson responded that he could not afford to repay the overpayment.

On March 21, 2009, OPM notified Mr. Nelson that the determined overpayment amount was revised to $36,505.58. It stated he was not entitled to payments

received from July 1, 2002, through December 31, 2002, and from July 1, 2006, through December 31, 2008, because his earnings exceeded the 80% earnings threshold in calendar years 2001, 2005, 2006, and 2007. The notice explained the overpayment would be recovered through seventy-three monthly installments of $500 and a final installment of $5.58. Mr. Nelson requested that OPM waive the overpayment, claiming he had no knowledge of the overpayment and he should not be held responsible for OPM's mistake.

On May 25, 2011, in a reconsideration decision, OPM denied his request. Mr. Nelson appealed to the Board. OPM subsequently rescinded its May 2011 reconsideration decision and issued a new decision in February 2013, denying Mr. Nelson's request for waiver. OPM found Mr. Nelson was partially at fault for creating the overpayment. In addition, even though OPM found Mr. Nelson had not provided enough evidence to demonstrate financial hardship, it revised the repayment schedule so the overpayment would be repaid in 243 monthly payments of $150 and a final payment of $55.58.

Mr. Nelson appealed OPM's decision to the Board, arguing he was without fault for the overpayment and repaying it would cause hardship. On December 5, 2013, an Administrative Judge issued the Initial Decision affirming the OPM's decision. Mr. Nelson subsequently filed a petition for review to the full Board. On August 15, 2014, the Board affirmed the Initial Decision in its Final Order.

Mr. Nelson appeals the Final Order. This court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) (2012).

## DISCUSSION

### I. Standard of Review

This court's "scope of . . . review of [B]oard decisions is limited to whether they are (1) arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." *Forest v. Merit Sys. Prot. Bd.*, 47 F.3d 409, 410 (Fed. Cir. 1995) (citing 5 U.S.C. § 7703(c) (1988)). The issue of Board jurisdiction is a question of law this court reviews de novo. *Johnston v. Merit Sys. Prot. Bd.*, 518 F.3d 905, 909 (Fed. Cir. 2008). This court is bound by the Board's jurisdictional factual findings "unless those findings are not supported by substantial evidence." *Bolton v. Merit Sys. Prot. Bd.*, 154 F.3d 1313, 1316 (Fed. Cir. 1998).

## II. Disability Benefit Earnings Cap and Overpayment

Any person receiving retirement disability annuities under the age of sixty who receives income or wages in any calendar year "equal[ to] or greater than at least 80 percent of the current rate of basic pay of the position occupied immediately before retirement" is considered to have his or her earning capacity restored. 5 C.F.R. § 844.402(a). If earning capacity is considered restored, the retirement disability annuity "will terminate on the June 30 after the end of the calendar year in which earning capacity is restored." *Id.*

Recipients of retirement disability annuities "must report to OPM their income from wages or self-employment or both for that calendar year. . . . If an annuitant fails to submit the report, OPM may stop annuity payments until it receives the report." *Id.* § 844.402(d).

Once OPM has demonstrated to the Board by a preponderance of evidence that the overpayment occurred, the burden shifts to Mr. Nelson to "establish by substantial evidence that he . . . is eligible for a waiver or an adjustment." *Id.* § 831.1407(b).

OPM may recover an overpayment from a recipient who is not eligible for waiver. *See id.* § 831.1401. A recipient is eligible for waiver if (a) he or she is "without fault" and (b) "recovery would be against equity and good conscience." *Id.* § 845.301. One who receives an "overpayment is without fault if he or she performed no act of commission or omission that resulted in the overpayment. The fact that the [] OPM or another agency may have been at fault in initiating an overpayment will not necessarily relieve the individual from liability." *Id.* § 845.302. OPM is required to consider certain factors when determining fault:

(1) Whether payment resulted from the individual's incorrect but not necessarily fraudulent statement, which he or she should have known to be incorrect;

(2) Whether payment resulted from the individual's failure to disclose material facts in his or her possession, which he or she should have known to be material; or

(3) Whether he or she accepted a payment that he or she knew or should have known to be erroneous.

*Id.* § 845.302(a). "The individual's age, physical and mental condition or the nature of the information supplied to him or her by OPM or a Federal agency may mitigate against finding fault." *Id.* § 845.302(b).

Even if Mr. Nelson "is ineligible for waiver," he may still be "entitled to an adjustment in the recovery schedule if he [] shows that it would cause him [] financial hardship to make payment at the rate scheduled." *Id.* § 845.301. "Financial hardship may be deemed to exist in—but not limited to—those situations where the annuitant from whom collection is sought needs substantially all of his/her current income and liquid assets to meet current

ordinary and necessary living expenses and liabilities."
*Id.* § 831.1404.

OPM may take into account certain factors when de-
termining whether recovery would cause financial hard-
ship: "(1) The individual's financial ability to pay *at the
time collection is scheduled to be made.*  (2) Income to
other family member(s), if such member's ordinary and
necessary living expenses are included in expenses re-
ported by the annuitant." *Id.*  § 831.1404(a).

### III. The Board's Finding that Mr. Nelson Was Not Without Fault for the Overpayment Was Supported by Substantial Evidence

Mr. Nelson's entitlement to a waiver is governed by
whether he was at fault for the overpayments.  Mr. Nel-
son does not contest he received an overpayment, he does
not disagree with the overpayment amount, and he does
not contest he had notice of the 80% earnings limit.  In his
petition for appeal to the Board, he argued only that he
was not at fault for the overpayments.

The Board's finding that Mr. Nelson was not without
fault was supported by substantial evidence.  Thus, it was
within its discretion to deny Mr. Nelson's waiver request.
*See* 5 C.F.R. § 831.1407(b).  The record shows Mr. Nelson
received a letter dated April 4, 2005, outlining his 80%
earnings limitation and his responsibility to report his
earnings to OPM.  As the Board found, Mr. Nelson "was
put on further notice concerning the 80% limitation upon
his receipt of the agency's February 1, 2006 notice of
overpayment" and he chose not to report his 2007 earn-
ings.   Initial Decision at 7 n.5.   Mr. Nelson accepted
retirement benefit payments when he knew or should
have known he was ineligible to receive such benefits.
*See* 5 C.F.R. § 845.302(a)(3).  By not reporting his earn-
ings, and by not setting aside known ineligible payments,
Mr. Nelson performed several acts of "omission that

resulted in overpayment." *Id.* § 845.302. The overpayment was a result of Mr. Nelson's "failure to disclose material facts in his [] possession," mainly, his salary amount and the fact that his salary exceeded the 80% limit. *Id.* § 845.302(a)(2).

## IV. The Board's Finding that Mr. Nelson Was Not Entitled to Further Adjustment of the Recovery Schedule Was Supported by Substantial Evidence

Mr. Nelson is eligible for an adjustment of his payment schedule if he can show the current recovery schedule would cause "financial hardship." *Id.* § 845.1404. The Board's finding that Mr. Nelson "failed to show that he is entitled to any adjustment on the collection schedule," Initial Decision at 10, was supported by substantial evidence.

As the Board found, Mr. Nelson failed to show he would face financial hardship because he did not provide substantial evidence to establish his current income. This made it impossible to determine whether he "needs substantially all of his[] current income and liquid assets to meet current ordinary and necessary living expenses and liabilities," 5 C.F.R. § 831.1404, or to determine his "financial ability to pay *at the time collection is scheduled to be made*," *id.* § 831.1404(a)(1).

Although Mr. Nelson did not file a required "Financial Resources Questionnaire," he provided an unsworn statement stating he was living on social security and disability payments, and listed several of his expenses. Initial Decision at 7. The statement did not list his or his spouse's specific incomes.

OPM substantially revised Mr. Nelson's payment schedule in February 2013. Mr. Nelson failed to provide sufficient evidence asserting he is entitled to further schedule adjustments.

CONCLUSION

For the reasons set forth above, the decision by the Board is

**AFFIRMED**

COSTS

No costs.